HENRY BAUER, RESPONDENT, v. VICTORY CATERING COMPANY, APPELLANT.

Argued January 22, 1925—Decided March 16, 1925.

The G. S. Co., a corporation, was a manufacturer of silverware. It contracted with the V. C. Co., a corporation, by parol, to sell it silverware to the amount of $8,000, to be specially marked, part to be delivered between June 15th and July 1st, 1921, balance between August 15th and September 15th of the same year. On July 7th, 1921, the V. C. Co. wrote to the G. S. Co. to hold the order until notified to ship the same. No order for shipment was ever given by the V. C. Co. About March 1st, 1922, the G. S. Co. prepared the silverware for sale to others by removing the special marks and repolishing. The silverware was sold for $1,614.96 less than the price contracted to be paid. The G. S. Co. then assigned its claim to the plaintiff, a resident of New Jersey, who instituted suit against the V. C. Co. *Held,* (1) that the contract for the silverware, although the silverware was not existing at the time of the making of the contract *in solido,* was a contract for the sale of goods, being for an article made in the usual course of the business of the seller, and was not a contract for work and materials; (2) that the transaction was

a contract for the sale of goods, wares and merchandise, within the sixth section of the statute of frauds (2 *Comp. Stat., p.* 2615), as amended by the act entitled, "An act concerning the sale of goods and to make uniform the law relating thereto" (*Pamph. L.* 1907, *p.* 311) ; (3) that a memorandum to satisfy the statute of frauds must contain the full terms of the contract—that is, the names of the buyer and seller, the subject of the sale, the price, terms of credit, and the conditions of sale, if any there be; (4) that where the evidence is undisputed that no memorandum of the contract sufficient to satisfy the statute of frauds has been signed by the party to be charged, no part of the goods has been delivered and accepted by the buyer, no earnest to bind the contract has been given, no payment in part has been made, and the contract is for goods of a value exceeding $500, the question as to whether the contract is within or without the statute of frauds is a question of law for the decision of the trial judge; (5) that under the facts set forth in the paragraph next preceding, it was error to have submitted to the jury the questions as to whether the contract was for goods within the statute or for work and materials, and whether or not certain letters offered in evidence constituted a memorandum sufficient to satisfy the statute; (6) that the trial court should have directed the jury to find a judgment for the defendant.

On appeal from the Supreme Court.

For the appellant, *Cole & Cole* (*Clarence L. Cole,* of counsel).

For the respondent, *Simon L. Fisch.*

The opinion of the court was delivered by

KATZENBACH, J. This is an appeal from a judgment of the Supreme Court in an action at law tried at the Essex Circuit.

The Victory Catering Company, the appellant (hereinafter called the Victory Company), is a New Jersey corporation. It operated a restaurant on the boardwalk at Atlantic City. On April 10th, 1921, Milton J. Wolferman, president of the Gotham Silverware Company (hereinafter referred to as the Gotham Company), called at the place of business of the appellant in Atlantic City. He met a Mr. Wyler, president of the Victory Company; Mr. Meyer, the steward, and Mr.

Jacobs, the assistant manager. Mr. Wolferman endeavored to interest them in the purchase of new silverware for their restaurant and showed them samples which he had. They became interested. An order was given which Mr. Wolferman at first wrote on the back of a bill of fare. After a selection of styles and the quantity desired had been agreed upon and taken down by Mr. Wolferman on the back of the bill of fare, he packed up his samples and then took out his regular order book and wrote everything which had been ordered down in this book. Three copies of the order were made. The original was given to Mr. Wyler. The two copies were left in the order book. The amount of the order was approximately $8,000. Neither the memorandum on the back of the bill of fare, the original order, or copies were signed in behalf of the Victory Company. The silverware was to be marked with a crest which was to be a wreath with a V in the centre. Certain articles were to be stamped on the bottom "La Victoire." The order stated that certain of the articles were to be shipped between June 15th and July 1st, 1921; balance, August 15th and September 1st.

The Victory Company had on July 7th, 1921, received no part of the order. On that day it wrote a letter to the Gotham Company stating that part of the order given Mr. Wolferman was to have been delivered between June 15th and July 1st, and as the silverware had not arrived they had been obliged to make other arrangements, and to please hold the order until notified to ship the same. On July 15th, 1921, the Victory Company again wrote to the Gotham Company that they did not wish anything shipped to them until the Gotham Company received instructions. No instructions were ever received from the Victory Company. The Gotham Company wrote a number of letters to the Victory Company on the subject, but no shipping instructions were ever received.

The Gotham Company, about March 1st, 1922, prepared the silverware for sale by removing the crest and stamping, and repolishing it. This work cost $650. The goods were sold during the months of March and April, 1922, to res-

taurants and hotels. The amount realized after deducting the cost of the alteration of the goods for sale was $1,614.96, less than the price the Victory Company were to pay. In order to make the goods the Gotham Company was obliged to purchase some of the metal and obtain the dies for stamping, &c. The claim of the Gotham Company against the Victory Company was assigned to one Henry Bauer, of Bloomfield, Essex county, by the Gotham Company on March 23d, 1923, by an instrument in writing signed by the president of the Gotham Company to which the corporate seal of that company was attached, and attested by its secretary. The execution of the assignment was proved before a notary public of New York county. The assignee then instituted the present suit against the Victory Company upon the claim assigned to him laying the venue of said action in the county of Essex, the residence of the assignee.

The Victory Company set up several defenses in its answer. Among them were the defenses that the contract was within the statute of frauds and that the assignment of the claim to the plaintiff was sham, without consideration, and made for the sole purpose of enabling the Gotham Company to lay the venue in Essex county instead of Atlantic county, where the Victor Company had its principal office and place of business.

At the trial Mr. Wolferman was sworn as a witness. He testified to the facts above stated. A stenographer of the Gotham Company testified that she had written and mailed certain letters to the Victory Company, which were offered in evidence. The plaintiff rested. The defendant then called Mr. Wolferman as its witness and questioned him regarding the assignment of the claim to Mr. Bauer. The questions asked were principally directed to whether the assignment had been made by order of the board of directors of the Gotham Company and why the Gotham Company had not itself sued the Victory Company. Objections to these questions were made and sustained. The trial judge obliged Mr. Wolferman to answer the question as to what the consideration of the assignment was. He testified that it was one

dollar. The defendant offered no further testimony and rested. Each side moved for a direction of a verdict. The defendant's grounds were—first, that there was no proof that Mr. Wyler, the president of the Victory Company, had any authority to bind the company; second, that the assignment of the claim was made in bad faith and was a fraud, which disentitled the plaintiff to maintain the action; third, lack of any evidence that the Gotham Company was prepared to perform its contract; fourth, that the contract was within the statute of frauds because there was no memorandum in writing signed by the defendant. The trial judge denied both motions. Exceptions were duly taken.

In deciding the defendant's motion the trial judge stated that whether the case was within or without the statute of frauds was a question of fact for the determination of the jury. In his charge he left to the jury for its decision the questions whether the parties who attempted to contract for the Victory Company had the capacity to do so, whether the goods which were to be made for the defendant came within the statute of frauds, and whether the letters written by the defendant took the case out of the statute of frauds.

In determining whether or not a case is within or without the statute of frauds there may in some instances be disputed questions of fact which must be referred to the jury for determination so that the jury finally decides whether the case is within or without the statute. If, however, there is no disputed question of fact which it is necessary for a jury to pass upon, the question of whether or not a case is within the statute of frauds is a question of law for the determination of the trial judge.

In the present case there could be no dispute as to whether the goods in question were of the character which required a memorandum in writing to be signed by the Victory Company to enable the contract to be enforced.

The law governing this question was decided in this state in 1865 in the case of *Finney* v. *Apgar*, 31 *N. J. L.* 266, by the late Chief Justice Beasley. In speaking for the Supreme Court he said: "From a careful examination of the

English and American authorities and the principles illustrated by them, I think the following general rules may be deduced, viz—first, that a contract for the sale of goods which is purely executory, is as much within the statute as is one to be executed *in presenti;* second, that where a contract is made for an article not existing at the time *in solido* —to use the expression of the old cases—and when such article is to be made according to order, and as a thing distinguished from the general business of the maker, then such contract is, in substance and effect, not for a sale, but for work and materials.

"The first of the above rules is now received everywhere with entire judicial unanimity.

"With regard to the second rule, much conflict of opinion exists, but I think it is recommended by its evident consonance with the object of the statute, as well as by the decided weight of authority. It will be found to be sustained by the following well-considered cases: *Crookshank* v. *Burrell,* 18 *Johns.* 58; *Mixer* v. *Howarth,* 21 *Pick.* 205; *Hight* v. *Ripley,* 19 *Me.* 137; *Gardner* v. *Joy,* 9 *Met.* 177; *Lamb* v. *Crafts,* 12 *Id.* 353."

Twenty years later, 1885, this court, in the case of *Pawelski* v. *Hargreaves,* 47 *N. J. L.* 334, held that an order for trucks, which had been obtained by the seller (a Paterson manufacturer), after the giving of the order, from wagon builders in another city, was a contract for the sale of goods and within the statute.

In the case of *Mechanical Boiler Co.* v. *Kellner,* 62 *N. J. L.* 544, it was held that where a mechanical boiler cleaning appliance, a patented article, was affixed to the defendant's boiler by the plaintiff, it was a transaction for the sale of goods and within the statute of frauds.

Applying the principle of these cases to the facts of the present case, we find from the testimony that, although the articles for which the order was given were not existing at the time *in solido,* yet they were articles which were made in the course of the general business of the Gotham Company. Consequently, the contract was for a sale and not for work

and materials. The contract, therefore, to be enforceable, must be evidenced by a memorandum in writing signed by the Victory Company.

It was undisputed that the order taken down by Mr. Wolferman at the place of business of the Victory Company at Atlantic City, first on the back of the bill of fare and later in his order book, was not signed by the purchaser. There was no evidence that any part of the order had been accepted by the Victory Company, or that the company had given something in earnest to bind the bargain, or made part payment of the contract price. There was therefore no disputed question of fact upon any one of these branches of the case which could be properly left to the jury. This leaves but one question to consider, namely, whether the letters written to the Gotham Company by the Victory Company took the case out of the statute of frauds, by complying with the provision that there must be a memorandum in writing signed by the party to be charged, or his agent, in that behalf, to make the contract enforceable. The trial judge left to the jury the question as to the sufficiency of the letters to take the case out of the statute and the further question as to whether the writers of the letters had authority to bind the Victory Company. To take the case out of the statute the letters, or, at least, one of them, had, of course, to be written by one having authority to bind the sender, and also had to be a memorandum sufficient to satisfy the statute. If either of these elements were lacking then the case was within the statute. There was no dispute as to what the contents of the letters were. To satisfy the statute, however, the memorandum must contain the full terms of the contract. That is, the names of the buyer and seller, the subject of the sale. the price and terms of credit, and the conditions of sale, if any there be. *Johnson & Miller* v. *Buck,* 35 *N. J. L.* 338. A perusal of the letters written by the Victory Company to the Gotham Company show that they do not comply with these requirements. Since the letters fall short of the requirements necessary in a memorandum in writing signed by the party to be charged, it was unnecessary to determine whether

the writers thereof had authority from the Victory Company to write and sign them.

At the conclusion of the defendant's case the evidence (undisputed) was that the articles contracted for were of such a character as to be the subject-matter of a sale of goods within the statute. There was no memorandum in writing of the contract signed by the Victory Company sufficient to take the case out of the statute of frauds, no part of the goods had been delivered and accepted by the buyer, no earnest to bind the contract had been given by the purchaser, no payment, in part, had been made, and the goods were of a value exceeding the sum of $500. In this state of that evidence there was no question which could properly be submitted to the jury. It was error to have done so. The court should have directed a verdict for the defendant on the ground that the case was one within the statute of frauds. The views thus expressed on this branch of the case make it unnecessary to consider some of the other interesting questions raised in the record.

The judgment is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, KATZENBACH, LLOYD, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 12.