E. E. WARD, Plaintiff and Appellant, *v.* OTTO MATTUS-CHEK, et al., Defendants and Respondents.
No. 9688.
330 Pac. (2d) 971.
Submitted March 17, 1958. Decided July 14, 1958.
Rehearing Denied Nov. 12, 1958.

DeKalb, Dockery & Symmes, Lewistown, for appellant.

Raymond E. Dockery and H. Leonard DeKalb, Lewistown, argued orally for appellant.

Hall, Alexander & Burton, Great Falls, for respondents.

Edward C. Alexander, Great Falls, argued orally for respondents.

THE HONORABLE VISTOR H. FALL, District Judge (sitting in place of MR. JUSTICE BOTTOMLY).

The facts presented by this appeal are:

Otto and Frank Mattuschek are bachelors, owners of and reside on a ranch in Fergus County, Montana, consisting of about 3,540 acres. For many years past they have operated the ranch as a grain and stock enterprise.

E. F. Carnell is a licensed real estate broker at Lewistown, Montana, the county seat of Fergus County. Having heard that the Mattuscheck ranch might be for sale, he drove out to the place on or about May 14, 1953, and talked to the Mattuschek "boys". As a result of that conversation the following instrument was executed:

"Plaintiff's Exhibit 'A'

"Appointment of Agent

"I hereby appoint E. F. Carnell of Lewistown, Montana whose office is located in said City and State, my agent with the exclusive right to sell the following property:

"Our Ranch property 3540 acres, T. 23 & 22 - R - 19 & 20 - Fergus County Mont. ———

"For the sum of $30,000.

"Conditions and terms of the sale are as follows:

"Cash to seller. possession Dec. 1-1953, seller retain 5% landowner Royalty. seller pay 1953 taxes, seller transfers all lease land to Buyer.

"And I agree to furnish a title as outlined in the following paragraph A.———

"A. An abstract of title showing a good merchantable title to said property together with a warranty deed properly executed

"Said sale may be made for a less amount if hereafter authorized by me; you are further authorized to receive a deposit on the sale price. I agree to pay a commission of $1000- on the sale price and the commission shall be payable as soon as the sale is made and a down payment has been made, or sale price paid in full at the time of sale, and, or as soon as a binder fee has been collected on the sale whichever be first.

"This authorization is to remain in effect and full force for 30 days and thereafter until revoked by me in writing.

"Dated at Lewistown, Montana this 14th day of May 1953—

"x Otto Mattuschek

"x Frank Mattuschek"

A few days later Carnell met a party by the name of Ward with whom he was acquainted and attempted to "sell" the Mattuschek ranch to Ward. After some discussion, and on May 20, 1953, Ward agreed to buy the place for $30,000 and gave his check to Carnell for $2,500 as a "binder". The check, Plaintiff's Exhibit "B", is as follows:

310

''Plaintiff's Exhibit 'B'

''1st 93-73
Bank 921
Stock First National Bank of Lewistown
Corporation

 Lewistown, Montana, May 20 1953 No.————
Pay
To The 00
Order of Red Carnell $2500xx
————————twenty five hundred and no/100————————Dollars
 ''s/s E. E. Ward

''For down Payment on land
 ''Mattuschek
''(Endorsement E. F. Carnell)''

At the same time he executed Plaintiff's Exhibit ''C'' which
reads as follows:

 ''Plaintiff's Exhibit 'C'
''(Defendant's Exhibit No. 1)
Real Estate Fergus Realty City Property
Insurance 213 Main St. Phone 598 Farms
Rentals Lewistown, Montana Ranches
 May 20 - 1953 —

''I hereby agree to buy the Mattuschek place in accordance
with the terms of the agreement between E. F. Carnell and the
Mattuscheks Dated May 14, 1953.
 ''s/s/ E. E. Ward
''To Buy Or Sell — See 'Red' Carnell''

Immediately thereafter, Carnell drove out to the ranch and
advised Frank and Otto Mattuschek that he had ''closed'' a
deal and sold the ranch to Ward. Otto then asked Carnell
if Ward would lease back to them the ''farm'' land. Carnell
returned to town and asked Ward about this and after learn-
ing that such arrangement was agreeable, drove back again
to the ranch and advised the Mattuscheks that Ward would
lease them the farm land. A meeting was then arranged to be
held in Carnell's office in Lewistown to close the mechanics of

the sale to Ward and the lease back to the Mattuscheks. Out of this meeting a disagreement arose resulting in the refusal of the Mattuscheks to convey to Ward. An action was brought by Ward against the Mattuscheks seeking specific performance and for damages. The action was tried to the court sitting without a jury. Upon conclusion of the trial, the court refused the proposed findings and conclusions of each party and made and entered its own. The facts recited above were all found by the court to be true, and in addition, there was a finding that the reasonable annual rental value of the Mattuschek ranch is $2,500.

The court, among others, made the following conclusion of law: "That the plaintiff has failed to produce any note or memorandum in writing which is subscribed by the defendants or their authorized agent sufficient to satisfy the requirements of Section 13-606 and 93-1401-7 R.C.M. of 1947 with respect to the agreement or sale of real property alleged by plaintiff." And as a result held that plaintiff is not entitled to relief. Judgment and decree was entered accordingly. This appeal is from such judgment.

One of the questions presented is whether the writings (Plaintiff's Exhibits "A", "B" and "C") are sufficient to take the case out of the Statute of Frauds.

R.C.M. 1947, section 13-606, insofar as pertinent here, reads as follows:

"What contracts must be in writing. The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: * * *.

"5. An agreement * * * for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged.

"6. An agreement authorizing or employing an agent or

312

broker to purchase or sell real estate for compensation or a commission."

R.C.M. 1947, section 93-1401-7, insofar as pertinent, reads as follows:

"Agreement not in writing—when invalid. In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent; evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents: * * *

"5. An agreement for * * * the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

Few more fruitful sources of litigation can be found than that arising out of brokerage contracts relating to the sale of real estate. The annotations found at 48 A.L.R. 634, and 43 A.L.R. (2d) 1014, illustrate the point.

Much of the briefs and a great part of oral agreement was directed toward the question of the right of a real estate broker to enter into a contract for the sale of the seller's land. As we view it, for reasons hereinafter stated, that is not before this court on this appeal.

The note or memorandum must name the parties. It may consist of several writings. Johnson v. Elliott, 123 Mont. 597, 605, 218 Pac. (2d) 703.

The note or memorandum must contain all the essentials of the contract but may be stated in general terms. Dineen v. Sullivan, 123 Mont. 195, 213 Pac. (2d) 241.

With the foregoing principles of law in mind, an examination of Plaintiff's Exhibits "A", "B" and "C" shows the following:

The respondents Mattuscheks unqualifiedly and exclusively agreed in writing to permit Carnell for a period of thirty days to sell their ranch for $30,000 for which they agreed to pay

Carnell a commission of $1,000. The terms of sale were succinctly but adequately stated in these words: "Cash to seller. possession Dec 1-1953, seller retain 5% land-owner, Royalty. seller pay 1953 taxes, seller transfers all lease land to buyer."

The acceptance of Ward was in writing (Plaintiff's Exhibit "C"), and accompanied by a check (Plaintiff's Exhibit "B") as a down payment. It was unqualified. It is difficult to conceive of a more clear-cut offer and acceptance in writing than is evidenced in the exhibits above set forth. This is not a situation of a broker making a contract for the seller at all—it is simply a situation of a buyer executing, in writing, an unqualified acceptance of a seller's offer to sell.

This court said in Steen v. Rustad, 132 Mont. 96, 1957, 313 Pac. (2d) 1014, 1018: "It is well established that a court, in interpreting a written instrument, will not isolate certain phrases of that instrument in order to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and guiding intention of the parties. Mere isolated tracts, clauses and words will not be allowed to prevail over the general language utilized in the instrument. [Citing cases.]"

The further question has been presented that the offer ▉ executed by the Mattuscheks fails insofar as this plaintiff is concerned because of lack of mutuality, i. e., that Ward did not sign the contract executed by the Mattuscheks. Ordinarily, both parties to a written agreement execute it, but that is not always necessary. "While an agreement signed by one party only, without other evidence of obligation on, or acceptance by, the other party, will ordinarily be regarded as unilateral, mutuality does not require that both parties sign the contract, and if a contract signed by one party is acted upon by the other a binding agreement may result." 17 C.J.S. Contracts section 100, pages 443, 454. In support of this statement this court's opinion in Orem v. Hansen Packing Co., 91 Mont. 222, 7 Pac. (2d) 546, 549, is cited. In that case this court said: "* * * plaintiff contends that the letter,

Defendant's Exhibit 1, is not a contract because it is signed by only one party, and hence lacking in mutuality. It is signed, however, by the only party affected and bound by it, and it constituted a written offer by plaintiff.''

Again, in 37 C.J.S. Frauds, Statute of section 206, page 698, we find the following language: ''The two general rules as to the party or parties who must sign the memorandum are that a party not signing the memorandum cannot be charged on the contract, and that the only signature made necessary by the statute [of frauds] is that of the party to be charged, or, in other words, defendant in the action or the party against whom the contract is to be enforced. Mutuality of obligation is not essential to the validity of a contract, in so far as its compliance with the staute of frauds is concerned, and the fact that the contract may not be enforceable against one party, because not subscribed by him, is no defense to the other, by whom it is signed.''

Under the topic Specific Performance, 81 C.J.S. section 12, pages 434, 435, we find the following language: ''The rule was established soon after the enactment of the statute of frauds, that a contract, the memorandum of which was signed by the defendant, *may be specifically enforced by a plaintiff who has not signed,* notwithstanding because of the lack of such signature the contract could not be enforced against plaintiff, either in law or in equity, up to the time of the commencement of the suit, since the requisite mutuality is supplied by complainant's filing of his bill.'' This is supported by the citing of cases from several jurisdictions and among them the case of Johnson v. Elliott, 123 Mont. 597, 604, 218 Pac. (2d) 703, 707, wherein this court said: ''The plaintiff who had not signed the contract supplied the necessary mutuality of obligation by the institution of the action on the contract.''

In Cowan v. Tremble, 111 Cal. App. 458, 462, 296 Pac. 91, 93, the California court had this to say on the subject: ''Nor does this rule render the contract liable to the objection of a lack

of mutuality, for, by bringing the suit the plaintiff binds himself to abide by the judgment of the court."

Nor can objection be made on the part of the defendants that ▮ their offer was not intended for this particular plaintiff and hence, fails for lack of mutuality. It is the rule that if the memorandum is otherwise sufficient it is binding for the purpose of satisfying the statute of frauds, "even though it is not intended for, or addressed, delivered, or known to, the other contracting party." 37 C.J.S. Frauds, Statute of section 173 d, page 651.

However, all this is somewhat beside the point for the reason that the plaintiff, as pointed out above, accepted the offer of defendants, in writing and without qualification.

Some question has been raised as to the right of plaintiff ▮ to a decree of specific performance in this case.

This court in the case of Conner v. Helvik, 105 Mont. 437, 455, 73 Pac. (2d) 541, 547, disposed of this contention in the following words: "Defendants' contention that plaintiffs had an adequate remedy at law and should not be heard in a court of equity is without merit. Section 8717, Revised Codes [now R.C.M. 1947, section 17-804] provides: 'It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation [and that the breach of an agreement to transfer personal property can be thus relieved].' Defendants presented no evidence to overcome the presumption." See also Ide v. Leiser, 10 Mont. 5, 24 Pac. 695; Christiansen v. Aldrich, 30 Mont. 446, 76 Pac. 1007; Lowery v. Cole, 47 Mont. 64, 130 Pac. 410; Hogan v. Thrasher, 72 Mont. 318, 233 Pac. 607.

The judgment of the court below is reversed with instructions to enter "Conclusions of Law" in accordance with the views expressed herein; to enter judgment and decree for specific performance, and to award damages.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I dissent.

The instrument designated "Appointment of Agent" between the real estate agent, E. F. Carnell, and signed by Otto and Frank Mattuschek is simply a thirty day listing agreement. It does not constitute a power of attorney. It does not authorize the real estate agent to execute or deliver in the name of the Mattuscheks any deed of conveyance or any contract for sale and purchase. It is purely and simply an agreement between the real estate agent and the owners of the 3,540 acre ranch. Should the Mattuscheks wrongfully fail to perform their part of the agreement, the only loss to the real estate agent would be his commission of $1,000 to become due him upon a sale by the Mattuscheks of their property. Such would be the extent of the real estate agent's damage and it could be fully satisfied by the payment of money so that the extraordinary remedy of specific performance would neither be authorized nor available.

The Mattuscheks' listing agreement was with the real estate agent Carnell and not with Carnell's prospective purchaser for the property, and in my opinion Carnell's prospective purchaser, E. E. Ward, has no right of action for specific performance against the Mattuscheks to compel them by a court decree to make an involuntary conveyance to him of their ranch and holdings.

In my opinion, the judgment of the district court was correct and it should be affirmed.